ELSIE B. KAPPLER, MA Bar No. 562265
HONG PARK, DC Bar No. 475930
Federal Trade Commission
600 Pennsylvania Ave., N.W., CC-9528
Washington, DC 20580
(202) 326-3197 (fax)
ekappler@ftc.gov
hpark@ftc.gov
(202) 326-2466 (Kappler)
(202) 326-2158 (Park)

Attorneys for Plaintiff Federal Trade Commission

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Federal Trade Commission, | **Case No. CV-16-03406-PHX-SPL** |
| Plaintiff, | **FTC'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW** |
| v. | |
| Blue Saguaro Marketing, LLC, *et al.* | |
| Defendants. | |

**PROPOSED FINDINGS OF FACT**

1. Beginning in at least 2014, and continuing thereafter, Corporate Defendants have marketed internet-based business opportunities to consumers, including "Amazon Associates" websites and related advertising and marketing services.

2. Corporate Defendants, in numerous instances, have misrepresented to consumers that they are, or that they represent, Amazon.

3. Corporate Defendants have marketed Amazon Associate websites by promising consumers that they will create and advertise websites linked to Amazon, and that consumers will, or are likely to, receive substantial income by purchasing Corporate Defendants' products and services.

4. Consumers who paid Corporate Defendants for Amazon Associates websites and related advertising and marketing services, did not, or were not likely to receive, the substantial income they were promised.

5. Beginning in at least 2015, and continuing thereafter, Corporate Defendants have marketed services to consumers for finding, applying for, and obtaining grants ("Grant Services").

6. Corporate Defendants have marketed their Grant Services by misrepresenting that consumers will, or are likely to, receive grants worth thousands of dollars if consumers paid upfront fees for the Grant Services.

7. Consumers who paid upfront fees for the Grant Services did not receive grants.

8. Corporate Defendants have marketed their Grant Services to consumers using telemarketing calls from various phone numbers, including 800-244-3842.

9. Corporate Defendants have operated their Grant Services business from the same call centers, including 13201 N. 35th Avenue, Suites B12 and B20; 4045 E. McDowell Road; and 10640 N. 28th Drive, Suite C-104, Phoenix, Arizona.

10. Corporate Defendants' telemarketers have marketed the Grant Services to consumers using multiple combinations of Corporate Defendants' names and DBAs, including Grant Strategy Solutions.

11. Individual Defendant Carl E. Morris, Jr. has been the *de facto* owner and principal of Corporate Defendants.

12. Morris has had ultimate authority over Corporate Defendants' operations, including all aspects of the goods and services marketed by Corporate Defendants.

13. Morris has had ultimate authority over Corporate Defendants' employees.

14. Morris has had actual knowledge of Corporate Defendants' misrepresentations to consumers regarding their Grant Services, was recklessly indifferent to the truth or falsity of the misrepresentations, or was aware of a high probability of fraud and intentionally avoided learning the truth.

15. Individual Defendant Stephanie Bateluna has been the sole person registered with the State of Nevada to manage the affairs of Corporate Defendant Max Results Marketing, LLC ("Max Results").

16. Bateluna applied, and was the signatory for an account for Max Results with Wells Fargo Bank, N.A.

17. Bateluna is the *de facto* organizer and manager of Corporate Defendant Oro Canyon Marketing II, LLC ("Oro Canyon II").  She directed the statutory agent for Oro Canyon II to forward all documents received on behalf of Oro Canyon II to her.

18. Bataluna is the *de facto* organizer and manager of non-Defendant Purple Bulldog, LLC, a corporation that used funds that originated from consumers of Grant Services to pay employees of the Corporate Defendants.

19. Bateluna has had authority to control Max Results, including all aspects of the goods or services marketed by Max Results.

20. Bateluna has had actual knowledge of Max Results' misrepresentations to consumers regarding its Grant Services, was recklessly indifferent to the truth or falsity of the misrepresentations, or was aware of a high probability of fraud and intentionally avoided learning the truth.

21. Bateluna has had authority to control Oro Canyon II, including all aspects of the goods or services marketed by Max Results.

22. Bateluna has had actual knowledge of Oro Canyon II's misrepresentations to consumers regarding its Grant Services, was recklessly indifferent to the truth or falsity of the misrepresentations, or was aware of a high probability of fraud and intentionally avoided learning the truth.

23. Individual Defendant Stacey Vela has been a *de facto* manager for Corporate Defendants.

24. Vela has participated directly in Corporate Defendants' practice of defrauding consumers of upfront fees for Grant Services by directing consumer payments to various bank accounts controlled by Defendants, managing consumer

4

credit card chargebacks, and acting as Corporate Defendants' liaison with their credit card payment processor.

25. Vela had actual knowledge of Corporate Defendants' misrepresentations to consumers regarding their Grant Services, was recklessly indifferent to the truth or falsity of the misrepresentations, or was aware of a high probability of fraud and intentionally avoided learning the truth.

26. Defendants engage in no legitimate businesses.

27. Corporate Defendants change the locations of their call centers every 3 to 6 months.

28. Morris is a recidivist who has previously engaged in other telemarketing fraud.

29. Individual consumers have lost hundreds to tens of thousands of dollars in fees paid for Corporate Defendants' Grant Services.

30. On October 6, 2016, the FTC filed its Complaint; Memorandum in Support of FTC's *Ex Parte* Motion for TRO; and related papers. DEs 1-10.

31. On October 11, 2016, the Court entered the TRO. DE 22.

32. The TRO and all related papers were served on all Defendants. DEs 25-30, 32, and 37.

33. Defendants have not filed any papers opposing the entry of this Preliminary Injunction.

5

34. No Defendant has filed the financial statements required by Section VIII of the TRO.  DE 22.

35. No Defendant has provided an accounting of assets, documents, and records outside of the territory of the United States as required by Section X of the TRO.  DE 22.

36. No Defendant has provided a written acknowledgment of the receipt of the TRO as required by Section XXVI.  DE 22.

37. Defendants have deposited consumer payments for Grant Services into financial accounts held by Defendants and others engaged in the common enterprise, including the following financial accounts identified by the account holder, the Financial Institution, and last four digits of the account number:

    a. Blue Saguaro Marketing, LLC, Bank of America, 2068;

    b. Max Results Marketing LLC, JP Morgan Chase, 6791;

    c. Blue Saguaro Marketing, LLC, Wells Fargo, 0221;

    d. Marketing Ways.com, LLC, Wells Fargo, 0166;

    e. Max Results Marketing LLC, Wells Fargo, 6453;

    f. Sapphire Marketing II LLC, Bank of America, 5033;

    g. Purple Bulldog LLC, BBVA Compass, 2401;

    h. Cenex Hub Distribution, Bank of America, 0396;

    i. Max Results Marketing LLC, Chase Bank, 9625;

    j. Oro Canyon Marketing LLC, BBVA Compass, 1055;

    k.    Southwest Billing & Payments, Chase Bank, 2226;

    l.    Southwest Billing & Payments, Goldenwest Credit Union, 2754;

    m.    Southwest Billing & Payments, Wells Fargo, 9752;

    n.    M& V Venture Group, Bank of America, 1325;

    o.    Paramount Business Services, Mountain America Credit Union, 9041;

    p.    Bluhm Enterprises, Bank of America, 5100;

    q.    Oro Canyon Marketing LLC, Chase Bank, 6599;

    r.    Do Rite Plumbing & Remodeling, LLC, Chase Bank, 0265;

    s.    Do Rite Plumbing and Remodeling, Wells Fargo, 2232;

    t.    Stephanie A. Bateluna, Capital One Credit Card, 1151;

    u.    Carol Burnett, BBVA Compass, unknown;

    v.    Carol Burnett, Chase Bank, unknown; and

    w.    Unknown, BBVA Compass, 1086.

38.    In addition to the entities identified in Paragraph 37, Defendants have used the following entities to conduct their telemarketing operations: Cenex Hub Distribution, Sapphire Marketing LLC, Dreamland Marketing, DL Marketing, Grant Strategy Solutions, Bay Harbor Associates, Velocity Solutions, Markco Enterprises, Pro Media, Ewealth Masters, GAWH Corp., Empire Productions, Textport Electronic Sales, Ecommerce Advertising Team, Merchant Partner Alliance, Hit Marketing LLC, and Dreamline Fidelity Group, LLC.

## PROPOSED CONCLUSIONS OF LAW

1.  This Court has jurisdiction over the subject matter of this case, and there is good cause to believe it will have jurisdiction over all parties hereto.

2.  There is good cause to believe that venue lies properly with this Court.

3.  There is good cause to believe Corporate Defendants have acted as a common enterprise in marketing Grant Services. *See FTC v. Network Servs. Depot, Inc.*, 617 F.3d 1127, 1143 (9th Cir. 2010) (finding common enterprise when "the companies were beneficiaries of and participants in a shared business scheme"); *F.T.C. v. Ivy Capital, Inc.*, No. 2:11-CV-283 JCM GWF, 2013 WL 1224613, at *13-*14 (D. Nev. Mar. 26, 2013) (finding common enterprise, citing factors such as common office space, principals, and operations), *aff'd in part and vacated and remanded in part on unrelated grounds*, 616 F. App'x 360 (9th Cir. 2015); *F.T.C. v. Nat'l Urological Grp., Inc.,* 645 F. Supp. 2d 1167, 1182 (N.D. Ga. 2008) (common control, scheme, and office space); *FTC v. J.K. Publ'ns, Inc.*, 99 F. Supp. 2d 1176, 1202 (C.D. Cal. 2000) (conducting same scheme through "maze of interrelated companies").

4.  There is good cause to believe Morris is individually liable for the acts of Corporate Defendants in marketing Grant Services. *See FTC v. Commerce Planet, Inc.*, 815 F.3d 593, 600 (9th Cir. 2016) (individual liability for defendant who had authority to control and knowledge); *FTC v. Freecom Commc'ns, Inc.*, 401 F.3d 1192, 1205 (10th Cir. 2005) (noting evidence that the employees "danced to [the

8

individual's] tune" as he was a principal shareholder and finding that "a substantial inference existed that [the individual] had the authority to control the deceptive acts and practices"); *FTC v. Amy Travel Serv., Inc*., 875 F.2d 564, 574 (7th Cir. 1989) ("[T]he degree of participation in business affairs is probative of knowledge.").

5. There is good cause to believe Vela is individually liable for the acts of Corporate Defendants in marketing Grant Services. *See FTC v. J.K. Publ'ns, Inc.*, 99 F. Supp. 2d 1176, 1202 (C.D. Cal. 2000) (individual defendant participated in acts critical to corporate defendant's billing scheme).

6. There is good cause to believe Bateluna is individually liable for the acts of Corporate Defendants in marketing Grant Services. *See FTC v. Publ'g Clearing House, Inc.,* 104 F.3d 1168, 1170 (9th Cir. 1997), as amended (Apr. 11, 1997) (authority to sign documents on behalf of the corporation as president sufficient to demonstrate control); *FTC v. Transnet Wireless Corp.*, 506 F. Supp. 2d 1247, 1270 (S.D. Fla. 2007) ("An individual's status as a corporate officer gives rise to a presumption of ability to control a small, closely-held corporation.").

7. There is good cause to believe that Defendants have engaged, and are likely to continue to engage, in acts or practices that violate Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and the TSR, 16 C.F.R. §§ 310.3(a)(2)(iii) and 310.3(a)(4), including but not limited to falsely and misleadingly representing, directly or indirectly, expressly or by implication that consumers who pay Defendants upfront

9

fees will, or are likely to, receive grants. *See FTC v. Stefanchik*, 559 F.3d 924, 928 (9th Cir. 2009) (court considers "net impression" created by defendant's representations); *FTC. v. Grant Connect, LLC*, 827 F. Supp. 2d 1199, 1218 (D. Nev. 2011), *aff'd in part, vacated in part*, 763 F.3d 1094 (9th Cir. 2014) (deceptive grant services claims); *FTC v. Five-Star Auto Club, Inc.*, 97 F. Supp. 2d 502, 528 (S.D.N.Y. 2000) (finding defendant's potential rewards claims deceptive); s*ee also FTC. v. World Wide Factors, Ltd.,* 882 F.2d 344, 347 (9th Cir. 1989) (district court "need only to find some chance of probable success on the merits" in order to award preliminary relief).

8.     There is good cause to believe that immediate and irreparable harm will result from Defendants' ongoing violations of Section 5(a) of the FTC Act and the TSR unless Defendants are restrained and enjoined by Order of this Court. *See World Wide Factors, Ltd.*, 882 F.2d at 347 (irreparable injury presumed in statutory enforcement action).

9.     There is good cause to believe that the Court's ability to grant effective final relief for consumers in the form of monetary restitution and disgorgement of ill-gotten gains will suffer immediate and irreparable damage from the Defendants' transfer, dissipation, or concealment of their assets or business records unless Defendants continue to be restrained and enjoined by Order of this Court. *See FSLIC v. Sahni*, 868 F.2d 1096, 1097 (9th Cir. 1989) (possibility of dissipation of assets justifies asset freeze); *FTC v. Wealth Educators, Inc.*, No. CV

15-02375, 2015 WL 11439063 at *9 (C.D. Cal. Apr. 6, 2015) (same). *But see Johnson v. Couturier*, 572 F.3d 1067, 1085 (9th Cir. 2009) (likelihood of dissipation of assets justifies asset freeze).

10.    Good cause exists to permit the FTC to take limited expedited discovery from third parties as to the existence and location of Assets and Documents. *See FTC v. Pantron I Corp.*, 33 F.3d 1088, 1102 (9th Cir. 1994) ("[T]he authority granted by section 13(b) is not limited to the power to issue an injunction; rather it includes the authority to grant any ancillary relief necessary to accomplish complete justice.").

11.    Good cause exists to appoint a Receiver as Defendants' business is permeated with fraud. *See FTC v. U.S. Oil & Gas Corp.*, 748 F.2d 1431, 1432 (11th Cir. 1984) (holding that the court has inherent power "to grant ancillary relief, including freezing assets and appointing a Receiver, as an incident to its express statutory authority to issue a permanent injunction under Section 13") (per curiam); *SEC v. First Fin. Group*, 645 F.2d 429, 438 (5th Cir. 1981) ("it is likely that in the absence of the appointment of a receiver to maintain the status quo, the corporate assets will be subject to diversion and waste").

12.    Weighing the equities and considering the FTC's likelihood of ultimate success, a preliminary injunction order with an Asset freeze, appointment of a Receiver, limited expedited discovery as to the existence and location of Assets and Documents, and other equitable relief is in the public interest. *See FTC v.*

11

*World Wide Factors, Ltd.,* 882 F.2d 344, 347 (9th Cir. 1989) (public interest should have greater weight than private interest); *FTC v. Sabal*, 32 F. Supp. 2d 1004, 1009 (N.D. Ill. 1998) ("no legitimate interest in continuing to make false and misleading claims").

13.     No security is required of any agency of the United States for the issuance of a preliminary injunction.  Fed. R. Civ. P. 65(c).

                                Respectfully submitted,

                                */s/*
                                Hong Park
                                Elsie B. Kappler
                                Federal Trade Commission
                                600 Pennsylvania Avenue, NW, CC-9528
                                Washington, DC 20580
                                (202) 326-2466 (Kappler), -2158 (Park), -3197 (fax)
                                ekappler@ftc.gov, hpark@ftc.gov

                                Attorneys for Plaintiff
                                FEDERAL TRADE COMMISSION

Date:  October 21, 2016

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 21, 2016, I caused to be served the foregoing Proposed Findings of Fact and Conclusions of Law to the following parties via Federal Express overnight mail:

Blue Saguaro Marketing, LLC
Christopher Brugada, Manager
c/o Registered Agents, Inc.
401 Ryland Street, Suite 200-A
Reno, NV 89502

Marketing Ways.com
c/o Garland Watson
4114 N. 28th Street # 1009
Phoenix, AZ 85016

Max Results Marketing, LLC
Stephanie Bateluna, Manager
c/o Registered Agents, Inc.
401 Ryland Street, Suite 200-A
Reno, NV 89502

Paramount Business Services LLC
c/o Jamie L. White
168 N. 100 E. #250
St. George, UT 84770

Oro Canyon Marketing II, LLC
c/o Carol Burnett
857 S Del Rancho
Mesa, AZ 85208

Stephanie Bateluna
29627 N. 123rd Lane
Peoria, AZ 85383

Stephanie Bateluna
12707 W. Highland
Litchfield Park, AZ 85340

13

Stacey Vela
12745 W. Catalina Drive
Avondale, AZ 85392

On October 21, 2016, I also emailed the Proposed Findings of Fact and Conclusions of Law to Carl E. Morris, Jr.'s attorney, Fred Petti and Patricia Briones (Petti and Briones, PLLC, 5090 North 40th Street, Suite 190, Phoenix, AZ 85018) at fpetti@pettibriones.com and pbriones@pettibriones.com.

On October 21, 2016, I additionally caused the Proposed Findings of Fact and Conclusions of Law to be served on Robb Evans & Associates LLC via CM/ECF to their attorney Kevin Michael Judiscak, Engelman Berger PC, 3636 N Central Ave., Ste. 700, Phoenix, AZ 85012-1985, kmj@eblawyers.com.

Respectfully submitted,

/s/_____
Hong Park
Federal Trade Commission
600 Pennsylvania Ave., N.W., CC-2850
Washington, DC  20580
(202) 326-3197 (Fax)
(202) 326-2466 (Kappler)
(202) 326-2158 (Park)

Attorney for Plaintiff

Dated:  October 21, 2016